GOFF, Respondent, vs. YAUMAN and others (DODGE COUNTY PENSION BOARD), Appellants.

*April 14—May 20, 1941.*

644

For the appellants there was a brief by the *Attorney General, James Ward Rector,* deputy attorney general, and *Clarence G. Traeger,* district attorney of Dodge county, and oral argument by *Mr. Rector* and *Mr. Traeger.*

*Sheldon E. Meyer* of Waupun, for the respondent.

FRITZ, J.  In the proceedings under sec. 269.01, Stats., in an agreed case the court found that Alice Goff, hereinafter called the "plaintiff," and Emma Goff were joint tenants until the latter's death on March 24, 1940, under a deed dated October 30, 1916, which conveyed land in Dodge county, Wisconsin, and that upon plaintiff's surviving her cotenant a certificate of survivorship was issued to her by the county court; that from July, 1936, to her death Emma Goff received old-age pension assistance from Dodge county, and a claim for lien for the assistance furnished was filed on August 18, 1936, by the Dodge County Pension Board, hereinafter

called the "defendant," in the office of the register of deeds for Dodge county, but released on September 27, 1938, and a second claim for lien was filed on March 25, 1938; that $292.50 had been paid for assistance furnished prior thereto and $527 were paid after that date; and that there is a controversy as to whether the claim therefor is a valid lien against the property now owned solely by Alice Goff, as the surviving joint tenant. The court concluded that the joint-tenancy relation continued up to the death of Emma Goff on March 24, 1940, when, by reason of the termination of Emma Goff's joint tenancy, plaintiff became the sole owner free and clear of the claims for liens filed for the assistance furnished by the pension board; and that the claim for lien constitutes a doubtful claim and cloud on plaintiff's title and should be removed.

On this appeal from a judgment entered accordingly the defendant assigns as error the court's rulings that the second claim for lien, filed on March 25, 1938, did not destroy or affect the joint-tenancy interests of plaintiff and Emma Goff, and that plaintiff, as the surviving joint tenant, owns the property free and clear from the said second lien filed for sums advanced by Dodge county as old-age assistance to Emma Goff. No question is raised by defendant in respect to the first claim for lien because under sec. 49.26 (1), Stats. 1935, which was then in effect, there was no provision for filing a claim for a lien as security for old-age assistance. In support of its assignment of error the defendant contends that in enacting sec. 49.26 (4), Stats.,—(ch. 7, Laws of Sp. Sess. 1937),—it was the legislative intent that the lien provided thereby should attach to estates in joint tenancy, and secure the repayment of sums advanced for old-age assistance furnished a joint tenant, even though he might predecease his joint tenant. The defendant claims that the language employed in said sec. 49.26 (4), Stats., clearly contemplated the enforcement of the lien provided thereby following the death of an old-age assistance beneficiary who was

a joint tenant in real estate at the time the lien attached; and that the history of the legislation shows that sec. 49.26 (4), Stats., must have been intended to provide a lien enforceable against property received by a survivor from his deceased joint tenant, who had received old-age assistance.

On the other hand, plaintiff contends that sec. 49.26 (4), Stats., created a lien on only the property of Emma Goff; and unless there was some severance during her lifetime of the joint interests of the parties so as to cause a destruction of the relation of joint tenants, plaintiff, as the surviving joint tenant, took the title to the property, free and clear from all liens against Emma Goff's interest therein. Plaintiff claims, in this connection, that the lien under sec. 49.26 (4), Stats., is but like the lien on real property which a judgment creditor has by reason of the mere docketing of his judgment against a joint tenant without a levy on the land; that unless a joint tenancy has been destroyed by an effective severance of the interest of one from the interest of the other joint tenant, during the life of the joint tenant, so as to destroy the unity of title, they continue as joint tenants, until, upon the death of one, the survivor becomes the sole and absolute owner of the property; and that a lien will become extinguished upon the death of the joint tenant because there is then no property in the deceased which can be subjected to a lien.

The defendant's contentions must be sustained. Prior to the enactment of sec. 49.26 (4), Stats., by ch. 7, Laws of Sp. Sess. 1937, security for old-age assistance furnished an applicant was obtained under a provision in sec. 49.26 (1), Stats., which authorized the county judge to require, as a condition to the granting of a certificate for assistance, a transfer of the beneficiary's property from him to the agency administering the assistance. As the result of such a transfer by a joint tenant there would be a termination of the co-tenancy under the rule that such a tenancy is terminated upon the voluntary transfer of title to his interest by any joint

tenant.   33 C. J. p. 908, § 10; 14 Am. Jur. p. 86, § 14, and note 15.   The provision in sec. 49.26 (1), Stats. 1935, which authorized the county judge to require a transfer of the beneficiary's property, was rendered unnecessary and inapplicable to real estate in Wisconsin by the amendment enacted by ch. 7, Laws of Sp. Sess. 1937; and by sec. 49.26 (4), Stats., created thereby there was substituted for the transfer of title, which could theretofore be required, the statutory lien provided in sub. (4) as the means of securing the repayment of the old-age assistance benefits.   There is nothing in this legislation that indicates, even by implication, that the legislature intended the present law to be less comprehensive and effective in its application to secure such repayment than was the law for which it was substituted.   On the contrary, that the lien created by sec. 49.26 (4), Stats., was intended to be as enforceable and effective following the death of the joint tenant, who obtained the assistance, as his transfer as security would have been, is evident from the provisions in the new sec. 49.26 (4), Stats., that,—

"All old-age assistance paid to any beneficiary under sections 49.20 to 49.51 . . . *shall become and constitute a lien* as hereafter provided and *shall remain a lien until it is satisfied.* . . . From and after the time of such filing in the office of the register of deeds *the lien* herein imposed *shall attach* to any and *all real property* of the beneficiary presently owned or subsequently acquired, *including joint-tenancy interests,* in any county in which such certificate is filed for any amounts paid or which thereafter may be paid under sections 49.20 to 49.51, and *shall remain such lien until it is satisfied.* . . . Such lien *shall be enforceable* by the county filing the certificate *after transfer of title* of the real property by sale, *succession,* inheritance, or will, in the manner provided by law for the enforcement of mechanics' liens upon real property."

These provisions evince the legislative intent that the lien filed to secure repayment of the assistance furnished shall attach to the beneficiary's joint-tenancy interest, as well as

all of his other real property, and shall continue until it is satisfied, and that the lien shall be enforceable after,—but not before,—a transfer of the beneficiary's title by a sale during his life or by *"succession,* inheritance or will" as the result of his death. So long as he retains his interest in the property which is subject to the lien he is not to be disturbed. It is only when he parts with his interest and as the result thereof can no longer look to the property as his place to live or for income that the lien is enforceable. The common sense of this legislative policy is evident. Instead of obtaining security by a transfer of the beneficiary's property during his lifetime, that end is to be effected in a more considerate manner by providing that the assistance paid "shall become and constitute a lien" which shall from and after the filing thereof attach to his property presently owned or subsequently acquired, including joint-tenancy interests, and "shall remain such lien until it is satisfied;" and that "such lien shall be enforceable . . . after transfer of title of the real property by sale, succession, inheritance, or will in the manner provided by law for the enforcement of mechanics' liens." It was certainly not intended thereby to provide but a lien on a joint-tenancy interest which was to terminate with the death of the recipient of old-age assistance, and thereupon be unenforceable. That would be so inconsistent with the legislative history and evident plan in this respect that we cannot conclude that such an ineffective and useless consequence was intended by the legislature. On the contrary, it was evidently intended that there was to be provided by the legislation in question a lien which was to be effective upon the filing of a claim therefor and it was to continue effective so that it could be enforced by the foreclosure thereof upon,—but not before, —the death of the recipient and the consequent transfer of title to his joint-tenancy interest by virtue of the succession thereto of surviving joint tenants.

It is further contended by plaintiff that if sec. 49.26 (4), Stats., was intended to render the lien enforceable notwith-

standing her right to all interests in the property as the surviving joint tenant, then the statute is unconstitutional in that it would retroactively affect her joint-tenancy relationship created by the deed to her and her joint tenant before the enactment of the statute. This contention likewise cannot be sustained. There. is nothing in the nature of a joint tenancy which prevents the legislature from providing that a lien incurred against the interest of a joint tenant with his consent during his lifetime may be enforced against the property following his decease. As stated above, a joint tenancy can be severed and the right of survivorship defeated by a joint tenant conveying or alienating his interest. 33 C. J. p. 908, § 10. In Freeman on Cotenancy and Partition (2d ed.), p. 82, § 30, it is stated that "A mortgage executed by any of the joint tenants also operates as a severance." This statement is supported by *York v. Stone,* 1 Salk. 158, 91 Eng. Reprint, 146; and *Simpson's Lessee v. Ammons,* 1 Binn. (Pa.) 175, 2 Am. Dec. 425. In addition to these cases, *Hardin v. Wolf,* 318 Ill. 48, 148 N. E. 868, and *McPherson v. Snowden,* 19 Md. 197, 230, are cited in 2 Tiffany, Real Property (3d ed.), p. 210, § 425, in support of the statement that "In jurisdictions in which a mortgage ordinarily operates to transfer the legal title, a mortgage by a joint tenant, which involves such a transfer, will no doubt cause a severance of the joint tenancy." Following that Tiffany continues, "The same effect has been imputed to a mortgage in at least one state in which a mortgage does not involve a transfer of the legal title." This statement is supported by *Wilkins v. Young,* 144 Ind. 1, 41 N. E. 68, 55 Am. St. Rep. 162. We do not consider it necessary to finally determine whether the rule as to such a severance should be considered applicable in this state in the case of a mortgage. In either event, although the provisions in sec. 49.26 (4), Stats., do not of themselves create a lien upon estates in joint tenancy, they are a part of the plan under which persons, including joint tenants are permitted to apply for and receive old-age assist-

ance, and to thereby voluntarily subject their joint-tenancy interest in property to the lien provided under the plan as security for the repayment of the assistance furnished. To these transactions there are applicable the following conclusions stated in *Hawkins v. Social Welfare Board*, 148 Kan. 760, 764, 84 Pac. (2d) 930, in relation to a recipient of old-age assistance, who had applied for and accepted assistance granted her under the terms of a statute, to wit:

"That application, the grant of assistance, and the acceptance of that assistance constituted a contract between the plaintiff and the official boards having to do with the matter of the old-age assistance granted to her. Plaintiff entered into that contractual relation with defendants on the only terms they were authorized to deal with her— the terms of the statute—so she must be held to have consented to the lien which the statute enacted as a condition of the granting of the old-age assistance she thus obtained."

As there was likewise such consent on the part of Emma Goff, the resulting lien on her joint-tenancy interest under the provisions in sec. 49.26 (4), Stats., is comparable to the lien under a mortgage in that it likewise is a lien upon property as security for the repayment of money, and rests upon the consent of the person upon whose interest in the property the lien attaches. On the other hand, in this respect the lien under sec. 49.26 (4), Stats., differs from a judgment lien which arises ordinarily without the judgment debtor's consent. Because of this difference between these liens and the effect thereof on the question of the severance of a joint tenancy, the decision in *Musa v. Segelke & Kohlhaus Co.* 224 Wis. 432, 272 N. W. 657, is not in point. In secs. 270.79 and 272.14, Stats., relating to the lien of a docketed judgment, there is no such provision indicating the continuance of the right to enforce the judgment creditor's lien on a joint-tenancy interest after a joint tenant's death as there is in sec. 49.26 (4), Stats.,—in so far as it is provided therein

that the lien shall attach to all real property "including joint-tenancy interests" and "shall remain such lien until it is satisfied;" and "shall be enforceable . . . after transfer of title . . . by sale, succession, inheritance or will. . . ." At all events, it suffices in the case at bar that Emma Goff had, at the time she applied for old-age assistance under sec. 49.26 (4), Stats., the right to terminate the tenancy by transferring her interest; and likewise the right to subject this interest to the lien provided as security for such assistance by sec. 49.26 (4), Stats. In applying for and accepting the assistance, under the law which provided for the granting thereof upon the conditions that would operate to sever the tenancy, she terminated the tenancy by her own voluntary acts and was doing nothing more than what she had the right to do; and to which plaintiff had no more right to object than she would have had to object to a severance by an outright conveyance by Emma Goff of her interest in the property. Plaintiff had nothing but the right of survivorship if the joint tenancy was not severed and she had no right to restrain Emma Goff from severing the tenancy. As the statute does not affect joint tenancies directly, and they are to be affected only by and upon the voluntary act of a joint tenant at her own election, and at a time when she could so affect the tenancy at her election, there is no such retroactive application of the statute so as to render it invalid.

It follows that the judgment must be reversed and the cause remanded with directions to enter a judgment that provides that the lien in question is valid and enforceable upon the interest which Emma Goff had in the property when the lien was filed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the opinion filed.