[Civ. No. 16848. Second Dist., Div. One. Sept. 13, 1949.]

Estate of KATE A. ZARING, an Incompetent Person. MANSON H. ZARING, Respondent, v. JOHN E. GLOVER, Appellant.

Richard H. Cantillon for Appellant.

Paul Taylor for Respondent.

DRAPEAU, J.—Kate A. Zaring and her husband during their marriage owned a rooming house in Los Angeles. Title to the property was held in joint tenancy. Mr. Zaring was the first to die, and title vested in his widow as the surviving joint tenant.

Mrs. Zaring had two adult sons living, one in Los Angeles and the other in Texas. Mrs. Zaring conveyed title to the rooming house to herself and the Los Angeles son, as joint tenants. This son testified that he had an understanding with the Texas brother that the property would be used, all of it if necessary, to take care of the mother in her declining years, and that anything left over after her death would be divided equally between himself and his brother.

As the years went by after the death of her husband, Mrs. Zaring fell into the clutches of an artful and designing

stranger, who mulcted her of considerable sums, but did not get away with the rooming house. In view of this circumstance, and because of her age and mental condition, she was adjudged incompetent and the Texas son was appointed her guardian.

Apparently Mrs. Zaring was dissatisfied with the guardianship, for litigation ensued. Proceedings were had in the name of a grandnephew: (a) to cancel the joint tenancy deed vesting title in the mother and son; (b) to restore her to competency (see 77 Cal.App.2d 294 [175 P.2d 276]); and (c) to remove the Texas son as guardian.

Two of these proceedings (a and c) terminated adversely to the grandnephew, and the judgments are final. Nothing further was done with the petition to restore Mrs. Zaring to competency after decision by the District Court of Appeal, affirming an order granting a new trial on that issue.

While title to the rooming house was so held in joint tenancy by the mother and son, it was condemned for highway purposes. By the judgment in eminent domain $11,000 was awarded in payment for the property. (The guardian actually received a few dollars less than $11,000, because current Los Angeles taxes were deducted. It will, however, be referred to as $11,000.)

The guardian paid one-half of this sum to the Los Angeles son, the other joint tenant, and charged himself as guardian with the remaining one-half.

Then, Mrs. Zaring died at 87 years of age.

The principal question here involved is whether the one-half of the $11,000 accounted for by the guardian goes to the estate of the decedent, or to the surviving joint tenant. This issue was framed by objections to the guardian's final account by the special administrator of the estate.

Appellant contends that the joint tenancy was terminated when the guardian retained half of the money paid by the state, and paid the other half to the Los Angeles son. Further, it is contended that the two sons are estopped to claim otherwise.

The trial court found and adjudged to the contrary. There being substantial evidence in the record to support this finding, the only consideration is whether, as a matter of law, the proceeds from condemnation of the property lost their joint tenancy characteristic of belonging to the surviving joint tenant.

Survivorship is one of the incidents of joint tenancy,

and unless the estate is terminated before the death of a joint tenant, the executor of the decedent has no interest in the property. (*Dando* v. *Dando*, 37 Cal.App. 2d 371 [99 P. 2d 561].) ■ The estate of joint tenancy may be ended by agreement. (*Hiltbrand* v. *Hiltbrand*, 13 Cal.App. 2d 330 [56 P.2d 1292].) ■ Destruction of one of the four unities incident to the estate terminates joint tenancy. (See *Swartzbaugh* v. *Sampson*, 11 Cal.App.2d 451 [54 P.2d 73], for review of the nature of the estate in joint tenancy.) ■ The unity of possession in joint tenancy is not destroyed when a guardian takes charge of a ward's property. (*Doran* v. *Hibernia Savings & Loan Soc.*, 80 Cal.App.2d 790 [182 P.2d 630].) ■ And the proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they were acquired. (*Fish* v. *Security-First Nat. Bank*, 31 Cal.2d 378 [189 P.2d 10].)

■ There is no evidence of any agreement between Mrs. Zaring and her Los Angeles son to terminate the joint tenancy. Nothing was done by the decedent upon which a finding of termination could have been predicted. Therefore, there was no error in the ruling of the trial court in this respect.

■ Appellant also contends that the guardian should have accounted for the entire net rentals of the rooming house received by him before it was sold to the state. The guardian collected a total of rents of $2,019.85, charged himself as guardian with one-half thereof, and paid the remaining one-half to the other joint tenant. Also the guardian received a cashier's check, belonging to his ward, in the sum of $898.70, and charged himself with one-half thereof.

The court found that both items were from rentals of the rooming house while title was in joint tenancy in decedent and the Los Angeles son. Each cotenant had the right to share in the rentals. (*McWhorter* v. *McWhorter*, 99 Cal.App. 293 [278 P. 454].) The evidence supports this finding, and therefore, under the substantial evidence rule, it must stand.

■ Finally, appellant assigns error in allowing the guardian $600 for railway and bus fare and expenses going to and from Texas. The court found these expenses were reasonable and necessary to the welfare, health, and care of the mother and her estate. Allowances for traveling expenses for executors and administrators are made only when such expenses are necessary to the actual conduct of the estate. In this guardianship matter there was evidence, and the court

found that the traveling expenses were necessary for the estate and also for the welfare of the ward. Again the evidence supports the finding and it must stand.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied October 3, 1949, and appellant's petition for a hearing by the Supreme Court was denied November 10, 1949.