[Civ. No. 23190. Second Dist., Div. Three. Oct. 28, 1958.]

THE PEOPLE ex rel. Department of Public Works, Plaintiff and Respondent, v. FRANK O. NOGARR et al., Defendants; ELAINE R. WILSON, Appellant; FRANK H. WILSON et al., Defendants and Respondents.

Benjamin P. Riskin for Appellant.

No appearance for Plaintiff and Respondent.

Ward Sullivan and D. C. C. Kembitskey for Defendants and Respondents.

NOURSE, J. pro tem.*—This appeal presents but one question: Is a mortgage upon real property executed by one of two joint tenants enforceable after the death of that joint tenant?

The facts are not in dispute. The appellant, Elaine R. Wilson, hereinafter called "Elaine," and Calvert S. Wilson, hereinafter called "Calvert," were husband and wife. On April 10, 1950, they acquired the real property in question as joint tenants and the record title remained in them as joint tenants until the death of Calvert. In July 1954 Elaine and Calvert separated. On October 11, 1954, Calvert executed his promissory note to his parents, the respondents, Frank H. and Alice B. Wilson, hereinafter called "respondents." This note was in the sum of $6,440. At the same time he executed and delivered to respondents a mortgage upon the real property in question. Elaine did not have knowledge of or give her consent to the execution of this mortgage. On June 23, 1955, Calvert died. On May 8, 1956, the People of the State of California commenced an action to condemn the subject real property. By its complaint the condemner alleged that Elaine R. Wilson was the owner of the subject real prop-

*Assigned by Chairman of Judicial Council.

erty and that respondents were mortgagees thereof. By her answer Elaine alleged that she was the owner of the property, that respondents had no right, title or interest therein. Respondents by their answer alleged that they were the owners and holders of the mortgage executed by Calvert and prayed that the mortgage be satisfied from the proceeds of the condemnation award. By agreement the fair market value of the property was fixed at $13,800 and that amount together with interest was paid into court by the condemner. Thereafter trial was had as to the rights and interests of Elaine and the respondents. No formal findings were made by the court but by a memorandum ruling the court found that there was owing to respondents the sum of $6,440 upon the promissory note executed by Calvert and secured by the aforesaid mortgage and ordered that sum plus interest disbursed to respondents out of 50 per cent of the funds remaining in the hands of the trustee (the county clerk) after the payment of certain liens which were concededly a charge upon the joint estate. Judgment was entered accordingly. As a practical matter this resulted in distribution of 50 per cent of said balance to respondents as the amount found due them was in excess of one-half of the balance remaining after the payment of other liens.

It is appellant's contention that execution of the mortgage by Calvert did not operate to terminate the joint tenancy and sever his interest from that of Elaine but that the mortgage was a charge or lien upon his interest as a joint tenant only and that therefore upon his death his interest having ceased to exist the lien of the mortgage terminated and that Elaine was entitled to the distribution of the entire award exclusive of the sums distributed to other lien holders.

We have reached the conclusion that appellant's contention must be sustained. In order that a joint tenancy may exist four unities are required; unity of interest, unity of title, unity of time and unity of possession. (*Hammond v. McArthur*, 30 Cal.2d 512, 514 [183 P.2d 1] and authorities there cited.) So long as these unities exist the right of survivorship is an incident of the tenancy and upon the death of one joint tenant the survivor becomes the sole owner in fee by right of survivorship and no interest in the property passes to the heirs, devisees or personal representatives of the joint tenant first to die. (*King v. King*, 107 Cal.App.2d 257 [236 P.2d 912]; *Estate of Zaring*, 93 Cal.App.2d 577, 579-580 [209 P.2d 642].)

It is undisputed in the present case that a joint tenancy in fee simple existed between Elaine and Calvert at the time of the execution of the mortgage, that at that time there existed all of the four unities, that consequently Elaine upon the death of Calvert became the sole owner of the property in question and under the doctrine of equitable conversion of the entire award in condemnation, unless the execution by Calvert of the mortgage destroyed one of the unities and thus severed the joint tenancy and destroyed the right of survivorship.

■ Under the law of this state a mortgage is but a hypothecation of the property mortgaged. It creates but a charge or lien upon the property hypothecated without the necessity of a change of possession and without any right of possession in the mortgagee and does not operate to pass the legal title to the mortgagee. (Civ. Code, § 2920; *McMillan* v. *Richards,* 9 Cal. 365, 406, 411 [70 Am.Dec. 655]; *Dutton* v. *Warschauer,* 21 Cal. 609, 621 [82 Am.Dec. 765]; 33 Cal.Jur. 2d 423-424.)

■ Inasmuch as the mortgage was but a lien or charge upon Calvert's interest and as it did not operate to transfer the legal title or any title to the mortgagees or entitle the mortgagees to possession it did not destroy any of the unities and therefore the estate in joint tenancy was not severed and Elaine and Calvert did not become tenants in common. It necessarily follows that as the mortgage lien attached only to such interest as Calvert had in the real property when his interest ceased to exist the lien of the mortgage expired with it. (*Application of Gau,* 230 Minn. 235 [41 N.W.2d 444]; *Power* v. *Grace,* 1 D.L.R. 801; *Zeigler* v. *Bonnell,* 52 Cal.App. 2d 217, 219-221 [126 P.2d 118] cited with approval in *Hammond* v. *McArthur, supra,* 30 Cal.2d 512.)

In *Zeigler* v. *Bonnell, supra,* it was directly held that a judgment lien upon the interest of a joint tenant terminated on the death of the judgment debtor joint tenant. In so holding the court said (p. 219) : "The right of survivorship is the chief characteristic that distinguishes a joint tenancy from other interests in property. The surviving joint tenant does not secure that right from the deceased joint tenant, but from the devise or conveyance by which the joint tenancy was first created. (Citation.) While both joint tenants are alive each has a specialized form of a life estate, with what amounts to a contingent remainder in the fee, the contingency being dependent upon which joint tenant survives. The judgment lien of respondent could attach only to the interest of his

debtor, William B. Nash. That interest terminated upon Nash's death. After his death there was no interest to levy upon. Although the title of the execution purchaser dates back to the date of his lien, that doctrine only applies when the rights of innocent third parties have not intervened. Here the rights of the surviving joint tenant intervened between the date of the lien and the date of the sale. On the latter date the deceased joint tenant had no interest in the property, and his judgment creditor has no greater rights. . . . This rule is sound in theory and fair in its operation. When a creditor has a judgment lien against the interest of one joint tenant he can immediately execute and sell the interest of his judgment debtor, and thus sever the joint tenancy, or he can keep his lien alive and wait until the joint tenancy is terminated by the death of one of the joint tenants. If the judgment debtor survives, the judgment lien immediately attaches to the entire property. If the judgment debtor is the first to die, the lien is lost. If the creditor sits back to await this contingency, as respondent did in this case, he assumes the risk of losing his lien.''

We are unable to distinguish between the effect of a judgment lien and of a lien of a mortgage executed by one joint tenant only. The only distinction between the two liens is that the mortgage lien is a lien upon specific property while the judgment lien is a general lien upon all real property of the judgment debtor. (*McMillan* v. *Richards, supra,* 9 Cal. 365, 409.)

In *Hammond* v. *McArthur, supra,* in discussing the operation of a mortgage as a severance of joint tenancy, the Supreme Court, in what is undoubtedly dictum, as a mortgage was not there involved, said (p. 515) : ''In jurisdictions where a mortgage ordinarily operates to transfer the legal title, a mortgage by a joint tenant causes a severance of the joint tenancy. (Citation.) Also, in some states where a mortgage is regarded as mere security, a mortgage by a joint tenant brings the tenancy to an end. (Citation.) However, that conclusion is not in accord with the common law authorities to the effect that the creation by a joint tenant of a mere charge upon the land is a nullity as against the right of survivorship of the other joint tenant. (Citation.)''

Respondents have directed our attention to decisions of other jurisdictions which they assert support their contention that a joint tenant has a right to mortgage his interest and

that this operates to sever the joint tenancy. Examination of each of the cases relied upon by respondents discloses that all except one of them were rendered in jurisdictions where a mortgage operated not merely as a lien or charge upon the mortgagor's interest but as a transfer or conveyance of his interest, the conveyance being subject to defeasance upon the payment of the mortgage debt. It is evident that in those jurisdictions where a mortgage operates to convey title to the mortgagee the unity of title is destroyed and in those jurisdictions where it operates not only to transfer title but the right of possession to the mortgagee both the unity of title and of possession are destroyed and that in either case there is a severance of the joint tenancy.

Respondents place their main reliance upon *Wilken* v. *Young*, 144 Ind. 1 [41 N.E. 68, 590, 55 Am.Rep. 162] decided by the Supreme Court of the State of Indiana. At the time this decision was rendered Indiana adhered to the lien theory of mortgages and the case undoubtedly strongly tends to support respondents' position. We do not, however, feel bound by it.

In the first place the Supreme Court of Indiana based its holding that a joint tenant might mortgage his interest and that the lien of the mortgage survived his death upon two cases: *York* v. *Stone*, 1 Salk 158 and *Simpson's Lessee* v. *Ammons*, 1 Binney (Pa.) 175. We will comment further on these opinions later in this opinion, but direct attention here to the fact that both of them were rendered in jurisdictions where a mortgage operated as a conveyance of the mortgagor's interest.

In the second place the Supreme Court of Indiana did not hold that the execution of the mortgage operated as a severance of the joint estate so as to destroy the right of survivorship but expressly held that there was no severance and that upon the death of the mortgagor life tenant the surviving joint tenant took by virtue of the tenancy but as to one-half of the property she took only the right of redemption from the mortgage created by the deceased joint tenant.

The decision seems to us entirely illogical and the result of it unjust for under it one joint tenant might, as in the case at bar, mortgage and obtain the full value of an undivided one-half of the joint tenancy property and yet retain his right to the entire property as the surviving joint tenant should his cotenant be the first to die; while that cotenant, if the survivor, would take but the right to acquire from the

mortgagee the one-half interest to which she had the right as the survivor. Further, the mortgagee would by the mortage obtain a lien upon an undivided one-half interest which would not be defeated by the death of the mortgagor but also be a lien upon the whole property were the mortgagor to be the survivor.

*York* v. *Stone, supra,* was decided by the chancery court in England and in that jurisdiction the mortgage operated to transfer the legal title to the mortgagee and gave the mortgagee the right to immediate possession.

In *Simpson's Lessee* v. *Ammons, supra,* 1 Binney (Pa.) 175, decided by the Supreme Court of Pennsylvania in 1806, the court without citation of authority for the statement or the statement of any reason therefor stated (p. 177): ". . . the court are of opinion that the mortgage was a severance of the joint tenancy. The interest of Baynton and Morgan passed by it, but the interest of Wharton was not affected." While there is some conflict in the decisions of the Pennsylvania courts as to whether a mortgage operates merely as a charge or lien upon the property mortgaged or as a transfer of the title of the mortgagor, undoubtedly, the Supreme Court of Pennsylvania in rendering its decision in the Simpson case considered a mortgage as vesting title in the mortgagee for in *Moliere's Lessee* v. *Noe,* 4 Dall. (U.S.) 450 [1 L.Ed. 905], which was decided by the Supreme Court of Pennsylvania in the same year that it decided the Simpson case, Mr. Justice Tilghman who was the author of the opinion in the Simpson case said: "Before I dismiss this subject, I will give my opinion concerning debts due by mortgage, which were mentioned in the course of the argument. I conceive them to stand on a different footing from judgments, because the mortgagee is strictly speaking, the owner of the land, and may recover it in an ejectment. The mortgagor has no more than an equity of redemption . . ." (See also *Martin* v. *Jackson* (1856), 27 Pa. 504 [67 Am.Dec. 489].)

Counsel have also directed our attention to *Wolf* v. *Johnson,* 157 Md. 112 [145 A. 363]. This case was decided by the Supreme Court of Maryland. In the opinion, the question as to whether the execution of a mortgage by a joint tenant terminated the joint tenancy is not discussed but is assumed. The entire question discussed by the court was whether the estate there in question was one "by the entireties" or one of joint tenancy. We assume that the reason the question as to

severance was not argued or discussed is that under the law of Maryland a mortgage operates to transfer the legal title to the mortgagee and in the absence of contract gives him the right to possession and would therefore necessarily destroy the unities of both title and possession. (*Kramer* v. *United States,* 190 F.2d 712; *Williams* v. *Safe Deposit & Trust Co.,* 167 Md. 499 [175 A. 331, 333].)

Respondents also rely upon the decision of the Supreme Court of Wisconsin in *Goff* v. *Yauman,* 237 Wis. 643 [298 N.W. 179, 134 A.L.R. 952]. There the court held that a statutory lien upon the interest of a joint tenant of real property created under the old age assistance statutes of Wisconsin survived the death of the joint tenant. The decision of the court was based entirely upon the construction of the statute and the court expressly stated that it was not determining as to whether or not a severance would be created by the execution by a joint tenant of a mortgage. It may be pointed out that under a similar statute and in a much better reasoned decision the Supreme Court of Minnesota reached the opposite conclusion to that reached by the Supreme Court of Wisconsin and held that a statutory lien upon the interest of a joint tenant terminated with the death of that tenant. (*Application of Gau,* 230 Minn. 235 [41 N.W.2d 444].)

There is nothing inequitable in holding that the lien of respondents' mortgage did not survive the death of the mortgagor. Their note was payable upon demand and they could have enforced the lien and mortgage by foreclosure and sale prior to the death of the mortgagor and thus have severed the joint tenancy. If they chose not to do so but to await the contingency of which joint tenant died first they did so at their own risk. Under that event the lien that they had expired. If the event had been otherwise and the mortgagor had been the survivor the security of their lien would have been doubled.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

The petition of defendants and respondents for a hearing by the Supreme Court was denied December 23, 1958.