632 P.2d 978

Edmund BRANT and Dolores Brant, his wife, Plaintiffs-Appellees,

v.

Roger T. HARGROVE, personal representative and special administrator of the Estate of Anastasia Nealon, aka Anastasia Mercer, deceased; William Henry Brophy College, an Arizona non-profit corporation; Cecilia Rodney, Clara Erickson, Theresa Freitas, Bruno Nittler, Joseph Nittler and Rudolph Nittler, Defendants-Appellants.

No. 1 CA–CIV 4419.

Court of Appeals of Arizona,
Division 1,
Department B.

May 7, 1981.

Rehearing Denied June 17, 1981.

Review Denied July 14, 1981.

**476**

Jeffrey M. Proper and McLoone, Theobald & Galbut, P. C. by Martin R. Galbut, Phoenix, for plaintiffs-appellees.

Romley & Sherk by Roger T. Hargrove, Phoenix, for defendants-appellants.

## OPINION

HAIRE, Presiding Judge.

This appeal is from a judgment entered in a deed of trust foreclosure action.

Plaintiffs-appellees, Edmund Brant and Dolores Brant, commenced this action to recover the amount due on a promissory note and to foreclose a deed of trust on certain real property situated at the southwest corner of the intersection of McDowell Road and 24th Street, in Phoenix, Arizona. Among the various defendants were the

appellants, who were the personal representative and heirs of the estate of Anastasia Nealon Mercer.

Prior to trial the trial court granted the Brants' motion for partial summary judgment to the effect that the deed of trust constituted a valid lien upon the subject property. Shortly thereafter the matter proceeded to trial upon the only remaining issue, the appellants' affirmative defense of usury.

The principal issues raised by appellants concern two of the trial court's findings: 1) that the deed of trust constituted a valid lien upon the subject real property, and 2) that the underlying loan transaction was not usurious.

We will consider first whether the trial judge erred in finding that the deed of trust constituted a valid lien. On its face the deed of trust appeared to be regularly executed and acknowledged by the trustors, Nick Mercer and his wife, Anastasia Mercer, who owned the property as joint tenants with the right of survivorship. Appellants contended, however, that Anastasia's purported signature on the deed of trust was not genuine. In considering whether the trial judge properly granted summary judgment concerning the validity of the lien, we will assume that the record before him presented a genuine issue of fact concerning the validity of Anastasia's signature,[1] and proceed to discuss the principal rationale urged by appellees in support of the trial court's ruling.

The appellees contend that the question of the validity of Anastasia Mercer's signature was immaterial because the uncontroverted evidence shows that, at all times pertinent to the subject loan transaction, the property was owned by Nick and Anastasia Mercer as joint tenants with the right of survivorship.[2] They urge that, notwithstanding the invalidity of Anastasia's signature, the deed of trust constituted a valid

1. The appellees do not concede that the signature was not genuine, or if not genuine, that it was unauthorized.

2. The record concerning the joint tenancy is presented in more detail in our subsequent discussion of appellants' usury defense.

lien against the interest of Nick Mercer, the executing joint tenant. From this premise the appellees urge that upon the death of Anastasia, prior to the commencement of these foreclosure proceedings, Nick Mercer became the owner of the entire property as the surviving joint tenant. Through the application of the doctrine of after-acquired property,[3] appellees urge that after the death of Anastasia the trust deed lien attached to the entire property.

The validity of appellees' argument depends upon whether the execution by Nick Mercer of the deed of trust constituted a valid lien upon his joint tenancy interest in the property. If so, the question becomes whether the joint tenancy was severed by the granting of the valid trust deed lien by the one joint tenant. A severance would result in the creation of a tenancy-in-common to which no right of survivorship could attach, and the lienholder's rights would therefore have been limited to one-half of the property. On the other hand, if no severance occurred by reason of the execution of the deed of trust by the one joint tenant, the right of survivorship would remain intact and the lien would extend to the entire property upon the subsequent death of the non-executing joint tenant (Anastasia).

We will first consider whether at the time of its execution the deed of trust constituted a valid lien against the joint tenancy interest of Nick Mercer.

As drafted, the deed of trust named both Nick Mercer and Anastasia Mercer as trustors and provided signature spaces for execution by both of them. The validity of Nick Mercer's signature and his acknowledgment have not been questioned. The executed acknowledgment clause also included Anastasia Mercer's name, although, as indicated above, there was expert testimony that her signature on the deed of trust was not genuine. Appellants' initial contention, apparently based upon a conditional delivery theory, is that the deed of trust was absolutely null and void, even as against Nick Mercer, because it was not executed by both of the intended trustors. In support of their contention, appellants cite *Modular Systems, Inc. v. Naisbitt*, 114 Ariz. 582, 562 P.2d 1080 (App.1977), in which the court stated:

"The general rule is where an instrument has been executed by only a portion of the parties purported to be bound thereby, the instrument is incomplete and never takes effect as a valid contract even against those who have executed it. [Citations omitted]." 114 Ariz. at 585, 562 P.2d at 1083.

While this principle is undoubtedly generally valid, it cannot operate in favor of Nick Mercer under the facts of this case. See *Tracy-Collins Trust Company v. Goeltz*, 5 Utah 2d 350, 301 P.2d 1086 (1956). If we assume that Anastasia's signature on the deed of trust was neither genuine nor authorized, then the only reasonable inference under the evidence here is that it was an unauthorized signature affixed by Nick Mercer. Although the appellee-lenders might not have entered into this transaction had they been aware of the problem with regard to Anastasia's signature, the undisputed facts are that they had no knowledge in that regard. Based upon the assumed due execution of the deed of trust, they entered into the transaction and advanced the full amount of the loan funds based upon the security apparently afforded by the deed of trust. While obviously the deed of trust could not constitute a valid lien against Anastasia's joint tenancy interest in the property, to hold that it was invalid as against the interest of the executing joint tenant, Nick Mercer, would be to lend the aid of the court in the perpetration of a fraud on his behalf. The defense of conditional delivery would not be available to Nick Mercer under these circumstances, *Tracy-Collins Trust Company v. Goeltz, supra*. Unquestionably Nick Mercer, as a joint tenant, could legally convey or encumber his joint tenancy interest in the property without Anastasia's consent or knowledge. See *Cooley v. Veling*, 19 Ariz.App.

---

**3.** *See* A.R.S. § 33–806 A.

208, 505 P.2d 1381 (1973). We therefore hold that the deed of trust was not void, but rather was merely inoperative for the purpose of creating an encumbrance against the interest of the non-signing joint tenant. As against the joint tenancy interest of Nick Mercer, the deed of trust constituted a valid encumbrance at the time of its delivery.

The next question presented concerns whether Nick Mercer's interest, and therefore the deed of trust lien, extended to the entire fee interest in the property upon the subsequent death of Anastasia, or whether Anastasia's interest in the property became a part of her estate, free and clear of the lien created by the deed of trust. The resolution of this question requires that we determine whether under Arizona law the granting of a deed of trust lien by one joint tenant operates to sever the joint tenancy relationship.

This is a question of the first impression in Arizona, and requires an examination of the fundamental nature of the joint tenancy relationship. The major characteristic of the joint tenancy relationship, the right of survivorship, is authorized by Arizona statute, A.R.S. § 33–431 B, and our case law recognizes this type of ownership, even between husband and wife, when the granting instrument clearly evidences an acceptance of the right of survivorship by both spouses. *See In re Estate of Baldwin,* 50 Ariz. 265, 71 P.2d 791 (1937).

The creation of a joint tenancy with the right of survivorship, however, must occur in accordance with the common law "four unities" concept. *See generally, Brown v. Navarre,* 64 Ariz. 262, 169 P.2d 85 (1946). The question of what action on the part of the joint tenants, acting together or separately, is sufficient to accomplish a severance of the joint tenancy has not been the subject of extensive litigation in Arizona. The decisional law of Arizona, as in other jurisdictions, generally articulates the principle that action by a joint tenant which interferes with or destroys the continued coexistence of any one of the unities of time, title, interest and possession severs

the joint tenancy relationship, leaving the joint tenants as tenants in common, without the right of survivorship.

All jurisdictions appear to recognize and apply this severance principle to situations in which a joint tenant has made an absolute conveyance of his entire joint tenancy interest so as to destroy all four unities. However, the principle has not been consistently applied where the conveyance or interference with the joint tenant's ownership interest has fallen short of destroying all of the unities. Thus, a lease by a joint tenant of his interest for a term of years, although obviously destroying the unities of interest and possession has been held not to sever the joint tenancy relationship. *Tenhet v. Boswell,* 18 Cal.3d 150, 554 P.2d 330, 133 Cal.Rptr. 10 (1976). The court articulated the time-worn concept that "if an essential unity is destroyed the joint tenancy is destroyed and a tenancy-in-common results." Nevertheless it held that a lease does not sever a joint tenancy, recognizing that the major characteristic of the joint tenancy relationship was the right of survivorship and that the creation of a lease by one joint tenant should have no effect on the continued existence of this right. Likewise while the conveyance by one joint tenant of a life estate clearly interferes with the unities of possession and interest, the modern cases have not hesitated to find that such a conveyance does not operate to sever the joint tenancy. *Hammond v. McArthur,* 30 Cal.2d 512, 183 P.2d 1 (1947); *Tindall v. Yeats,* 392 Ill. 502, 64 N.E.2d 903 (1946). Nor does the creation of a judgment lien against the interest of one joint tenant work a severance. *Zeigler v. Bonnell,* 52 Cal.App.2d 217, 126 P.2d 118 (1942); *People's Trust & Savings Bank v. Haas,* 328 Ill. 468, 160 N.E. 85 (1927).

Most analogous to the deed of trust is a mortgage. Early common law decisions in other jurisdictions treated the execution of a mortgage against the interest of only one joint tenant as destroying the unities of title and possession, and thus causing a severance of the joint tenancy relationship. Osborne discusses this common law mortgage concept as follows:

"Perhaps the most striking and important feature of this mortgage is that the grantee, having legal title from the outset, got the incidents of that title even though unnecessary or even antagonistic to the sole purpose of the conveyance, namely, security for the performance of an act by the grantor. The most important of these incidents was the right to immediate possession." Osborne, Secured Transactions 217 (1967).

However, in jurisdictions following the more modern approach a mortgage against one tenant's interest does not sever the joint tenancy. *People v. Nogarr*, 164 Cal. App.2d 591, 330 P.2d 858, 67 A.L.R.2d 992 (1958); *D.A.D., Inc. v. Moring*, 218 So.2d 451 (Fla.App.1969). Commonly referred to as the lien theory, this approach views a mortgage as not passing legal title, the right of possession, or the other incidents of ownership to the grantee-mortgagee. Thus in *People v. Nogarr, supra*, the court states:

"Under the law of this state a mortgage is but a hypothecation of the property mortgaged. It creates but a charge or lien upon the property hypothecated without the necessity of a change of possession and without any right of possession in the mortgagee and does not operate to pass the legal title to the mortgagee. Civ. Code § 2920; *McMillan v. Richards*, 9 Cal. 365, 406, 411; *Dutton v. Warschauer*, 21 Cal. 609, 621; 33 Cal.Jur.2d 423–424." 164 Cal.App.2d at 594, 330 P.2d at 862.

By this analysis, these courts conclude that none of the four unities are violated.

Arizona courts have never directly held that a violation of one unity would operate a severance of a joint tenancy in real property, once the joint tenancy has been created. Severance was an issue in *In re Estate of Estelle*, 122 Ariz. 109, 593 P.2d 663 (1979). There, the court held that a property settlement agreement in a marital dissolution proceeding operated to sever the joint tenancy, finding it to be "patently inconsistent with the continued right of survivorship". The continued existence of the four unities was not at issue, as they apparently had not been destroyed; however, rather than emphasizing the existence or nonexistence of the unities, the court focused its attention upon whether the agreement was consistent with the continued right of survivorship. It stated:

"As a general rule, a joint tenancy may be severed or destroyed either by a direct provision in a contract or by implication if a provision of the contract is inconsistent with the continued existence of the joint tenancy." 122 Ariz. at 111, 593 P.2d at 665.

■ On similar facts, involving a property settlement and subsequent agreement to sell by listing the property with a real estate broker, a contrary result was reached by Division 2 in *Compton v. Compton*, 128 Ariz. 148, 624 P.2d 345 (App.1981).[4] In *Cooley v. Veling*, 19 Ariz.App. 208, 505 P.2d 1381 (1973), the Court of Appeals held that a joint tenant may create a mortgage that is valid against his joint tenancy interest in real property without consent of the other joint tenant. The court did not there consider, however, whether the execution of the mortgage effected a severance of the joint tenancy relationship. In *Cooley*, however, the court recognized that in Arizona a mortgage is no more than a lien for security for the payment of money or other condition and that neither legal nor equitable title passes to the mortgagee.[5] We therefore conclude, in accordance with the principles set forth in *People v. Nogarr, supra*, that in Arizona the granting of a mortgage lien by one joint tenant would not, in and of itself, operate to sever a joint tenancy.

■ Having arrived at this conclusion, the question remains as to whether the granting of a deed of trust lien, as opposed to a mortgage lien, by one joint tenant,

4. The Arizona Supreme Court's opinion in *In re Estate of Estelle, supra,* was not cited or discussed in *Compton*.

5. *Accord, Lane Title and Trust Co. v. Brannan*, 103 Ariz. 272, 440 P.2d 105 (1968); *Mortgage Investment Company of El Paso v. Taylor*, 49 Ariz. 558, 68 P.2d 340 (1937); *Steinfeld v. State*, 37 Ariz. 389, 294 P. 834 (1930).

should have any different effect upon the continued existence of the joint tenancy relationship. This precise question has been considered in *Hamel v. Gootkin*, 202 Cal. App.2d 27, 20 Cal.Rptr. 372 (1962), a jurisdiction where deeds of trust are utilized under principles substantially identical to those set forth in the Arizona statutes governing deeds of trust.[6] The California court noted that although the lien theory had been accepted in California with respect to mortgages in *Nogarr, supra*, a deed of trust arguably involved a transfer of legal title. The court then considered in detail the true nature of a deed of trust in order to ascertain whether such a transfer of legal title for security purposes was sufficient to result in a destruction of any of the unities necessary for the continued existence of a joint tenancy, stating:

> "In *Macleod v. Moran*, 153 Cal. 97, at pages 99–100, 94 P. 604, at page 605, the Supreme Court said: 'A trust deed of the kind here involved * * * conveys the legal title to the trustees so far as may be necessary to the execution of the trust. It carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt. The nature of such an instrument has been extensively discussed by this court, and the sum and substance of such discussion is that while the legal titles [sic] passes thereunder, and the trustees cannot be held to hold a mere 'lien' on the property, it is practically and substantially only a mortgage with power of sale. [Citations.] The legal title is conveyed solely for the purpose of security, leaving in the trustor or his successors a legal estate in the property, as against all persons ex-

cept the trustees and those lawfully claiming under them. (Civ. Code, secs. 865, 866). Except as to the trustees and those holding under them, the trustor or his successor is treated by our law as the holder of the legal title. [Citation.] The legal estate thus left in the trustor or his successors entitles them to the possession of the property until their rights have been fully divested by a conveyance made by the trustees in the lawful execution of their trust, and entitles them to exercise all the ordinary incidents of ownership, in regard to the property, subject always, of course, to the execution of the trust.' (See also *Hagge v. Drew*, supra, 27 Cal.2d 368, 376, 165 P.2d 461; *Burns v. Peters*, 5 Cal.2d 619, 622, 55 P.2d 1182; *Bank of Italy Nat. Trust & Sav. Ass'n v. Bentley*, 217 Cal. 644, 655–657, 20 P.2d 940; *Lancaster Security Inv. Corp. v. Kessler*, 159 Cal.App.2d 649, 656, 324 P.2d 634; *Pacific State Savings & Loan Co. v. North American, etc., Co.*, 37 Cal.App.2d 307, 309, 99 P.2d 355.)" 202 Cal.App.2d at 29, 30, 20 Cal.Rptr. at 373, 374.

The court then concluded that since mortgages and deeds of trust perform the same basic function, it would be unrealistic to reach a result different from that previously reached concerning mortgages in *People v. Nogarr, supra*, and upheld the trial court's determination that a severance of the joint tenancy relationship did not occur upon the execution of a deed of trust by one of the joint tenants. *See also, Maynard v. Sutherland*, 313 F.2d 560 (D.C.Cir.1962).

We agree with the reasoning of the California court that the execution of a deed of trust by one joint tenant does not operate

---

**6.** The statutory provisions governing deeds of trust for security purposes are found in A.R.S. §§ 33–801 through 33–821. For a detailed discussion of the Arizona Deeds of Trust Act, see Note, *The Deed of Trust: Arizona's Alternative to the Real Property Mortgage*, 15 Ariz.L.Rev. 194 (1973), in which the author concludes:

> "The Arizona Act defines a trust deed as a deed conveying legal title to real property to a trustee to secure the performance of a contract. This definition suggests that the trust deed, unlike the Arizona mortgage, will

convey title rather than create a lien. Nonetheless, the trustee is generally held to have bare legal title—sufficient only to permit him to convey the property at the out of court sale. All other incidents of title remain in the trustor. *Thus, in legal effect, there would seem to be no substantial difference between the trustee's 'title' and the mortgagee's 'lien.'*"

(Footnotes omitted; emphasis added). 15 Ariz.L.Rev. at 196.

to sever or terminate the joint tenancy relationship. Our statutes clearly provide for the passage of legal title to the trustee upon the execution of a deed of trust for security purposes, A.R.S. § 33–801(4). Thus, a deed of trust clearly destroys the common law unity of title. But an examination of the entire statutory scheme reveals that the trustee does not receive any of the rights commonly incident to ownership. Rather, the principal right which inures to the trustee over and above the right of a mortgagee is the right to exercise the "power of sale...under which the trust property may be sold...after a breach or default" in the performance of the terms of the secured contract or deed of trust. A.R.S. § 33–807 A.

We also note that the bare legal title held by the trustee is very tenuous, and may at any time prior to sale be terminated by unilateral action of the beneficiary. A.R.S. § 33–804 B. Likewise, after default, at any time before the property has been sold under the power of sale, the beneficiary may elect to file a foreclosure action and proceed to foreclose the deed of trust "in the manner provided by law for the foreclosure of mortgages on real property", thereby ignoring the continued existence of bare legal title in the trustee. See A.R.S. § 33–807 A and B.

■ These factors, as well as those discussed in *Hamel v. Gootkin, supra,* compel the conclusion that for the purpose of determining whether the execution of a deed of trust by one joint tenant automatically operates to effect a termination of the joint tenancy relationship, there is no justification for treating the execution of a deed of trust by one joint tenant differently from the execution of a mortgage by one joint tenant. We do not believe that dogged adherence to the requirements of the four unities in the context of severance is re-

quired by our case law. Here, there were no facts to indicate an intention to sever the relationship. We therefore hold that the execution of the deed of trust by Nick Mercer did not sever the joint tenancy relationship, and that upon the subsequent death of Anastasia Mercer, Nick Mercer as the surviving joint tenant held the entire feé interest in the property subject to the lien of the deed of trust previously executed by him.[7]

While the appellees rely upon the doctrine of after-acquired property[8] to extend their lien to the entire property upon the death of Anastasia, we find such reliance unnecessary. Rather, upon Anastasia's death, the inclusion of the entire property within the lien created by the deed of trust is due to the inherent unified nature of a joint tenant's ownership. As stated in *Graham v. Allen,* 11 Ariz.App. 207, 208, 463 P.2d 102 (1970):

> "Each [joint tenant] owns an individual whole and if any tenant dies, the other remaining survivors hold the totality as before."

*See also, Kleemann v. Sheridan,* 75 Ariz. 311, 256 P.2d 553 (1953). For the foregoing reasons we conclude that the trial judge did not err in holding that the deed of trust constituted a valid lien on the entire subject property.

The major remaining issues raised by appellants concern their contentions that the underlying loan transaction was usurious. The trial judge made detailed findings of fact and conclusions of law rejecting appellants' contentions in that regard. While we find that the record furnishes adequate evidentiary support for the trial court's findings and its conclusion that the loan transaction was not usurious, we will not discuss these findings and appellants' contentions in detail because in our opinion, to the extent that appellants might have had

---

7. As stated in G. Thompson, 4 Commentaries on the Modern Law of Real Property § 1780 (1979):

 "No charge upon the interest of one co-tenant...binds the estate in the hands of the survivor, unless the charge be created by the one who becomes the survivor, in which case

 the charge becomes binding upon the whole estate in his hands."

8. The Arizona statutes make the after-acquired property doctrine applicable to deeds of trust for security purposes. *See* A.R.S. § 33–806 A.

standing to assert the usury defense, they were estopped to do so.

In considering appellants' standing it must be borne in mind that the only questions remaining in this litigation concern the appellees' right to enforce the deed of trust lien against the subject property. Appellees are not attempting to enforce a contractual right against the estate of Anastasia Mercer based upon a claim that she was personally liable on the indebtedness, and we express no opinion as to whether appellants could assert a usury defense if such were the case. As has been previously noted in this opinion, the record is uncontroverted that the subject property was validly held by Nick and Anastasia Mercer as joint tenants with the right of survivorship at the time the loan transaction was entered into. Therefore, upon Anastasia's death Nick Mercer became the owner of the property by right of survivorship. It follows that for the purposes of this litigation and the assertion of any usury defense against the appellee-lenders, appellants' rights, if any, must be based upon a claimed present residual ownership of the liened property. Upon the record established in this litigation, since we have determined that the joint tenancy was not terminated by the execution of the deed of trust, such residual rights, if any, must be considered as having been obtained from Nick Mercer as the surviving joint tenant.[9] In that regard, the trial court expressly found "the Nealon defendants [appellants] can acquire no right greater than [Nick] Mercer would have had, and since Mercer would be estopped to deny the validity of the form and substance of the corporate mortgage loan, the Nealon defendants were also estopped."

We agree with the trial court's conclusion. The record shows, and the trial court expressly found that the appellees made the investment in the deed of trust loan in good faith with no intention to extract a usurious interest rate from the borrower. To the extent that there was any substance to appellants' claim of usury, it directly resulted from the wrongful conduct of Nick Mercer representing the corporate borrower. The record fully establishes that the lender relied upon Mercer's conduct in making the loan. Estoppel is not available as a usury defense when both the borrower and the lender know at the time of the loan transaction that it is usurious, *LaBarr v. Tombstone Territorial Mints*, 119 Ariz. 549, 582 P.2d 639 (1978); however, the *LaBarr* opinion acknowledged that most jurisdictions allow estoppel to be asserted against a claim of usury when the lender is innocent and the borrower's conduct has been fraudulent or deceptive and of such a nature as to satisfy the normal requirements for the assertion of an estoppel defense. *See generally, 91 C.J.S. Usury § 91* (1955); Annot. 16 A.L.R.3d 512 (1967). Here, the facts satisfy all of the requirements for the assertion of an equitable estoppel against Nick Mercer, *see Robbins Investment Co., Inc. v. Green Rose Associates, Inc.*, 8 Ariz.App. 596, 448 P.2d 440 (1968), and the trial court did not err in finding that appellants were estopped to assert a claim of usury against the enforcement of appellees' lien on the subject property.

In view of our conclusion that the record fully supports the trial court's determination that the loan was not usurious, and further that the appellants would be estopped to assert the defense of usury, we

---

9. Separate litigation (Maricopa County No. C–314203) between appellants and Nick Mercer was settled, and the settlement included Nick Mercer's stipulating to a judgment determining that the joint tenancy deed to the McDowell property was null and void, and that the McDowell property was an asset of Anastasia Mercer's estate. While a copy of that stipulated judgment was made an exhibit in this litigation, the trial judge expressly held that the judgment was not binding on the appellees, since they were not made parties to Cause No. C–314203. Appellants have not attacked this ruling. Therefore, the joint tenancy deed must be considered as valid and binding on appellants and since we have held that the execution of the deed of trust did not sever the joint tenancy relationship, for the purposes of this litigation we must assume that appellants have derived no interest in the subject property directly from Anastasia Mercer.

need not consider appellees' further claim that recent statutory amendments liberalizing chargeable interest rates have made appellants' usury contention inapplicable under the principles set forth in *American Savings Life Insurance Co. v. Financial Affairs Management Co., Inc.*, 20 Ariz.App. 479, 513 P.2d 1362 (1973).

 Appellants next contend that the trial court erred in the amount of attorney's fees awarded to appellees.

The evidence presented to the trial court at the evidence evidentiary hearing concerning attorney's fees established that the appellees had purchased a policy of title insurance from Transamerica Title Insurance Company insuring the validity of the subject deed of trust. Pursuant to this insurance policy, Transamerica was obligated to defend the appellees in any action seeking to invalidate the deed of trust. After the appellees hired Jeffrey M. Proper to bring an action to foreclose the deed of trust, the appellants raised, as an affirmative defense, the invalidity of the trust deed. At that point, Transamerica's obligation to provide representation for appellees came into play, and Transamerica made arrangements for Martin R. Galbut to represent appellees on the issues raised by appellants relating to the claimed invalidity of the deed of trust lien. Both Mr. Proper and Mr. Galbut testified at the hearing on attorney's fees, and it is uncontroverted that Mr. Galbut's representation of appellees did not duplicate the representation provided by Mr. Proper on behalf of appellees. Also, there is no contention that the total amount of the attorney's fees awarded for inclusion in the lien foreclosure was unreasonable. Rather, appellants' sole contention is that because Mr. Galbut's representation of appellees was furnished pursuant to the title policy purchased by appellees, no amount should have been included in the lien for the services rendered to appellees by Mr. Galbut. We reject this contention.

The deed of trust contained provisions for the payment of "all costs and expenses...including attorney's fees in a reasonable sum [of the appellees] in any suit brought by [appellees] to foreclose this deed of trust." The title insurance policy contained a subrogation provision relating to recovery of attorney's fees advanced by Transamerica on behalf of appellees. Under these circumstances the inclusion in the lien of an amount for the reasonable value of the services rendered by Mr. Galbut in his representation of appellees was not error, notwithstanding the fact that these fees had been advanced by Transamerica, and that appellees had no direct liability to pay for them. Here, because of the subrogation provision in the policy and Transamerica's active participation in this litigation, there can be no contention that appellees will receive a "windfall" or recovery over and beyond that actually contemplated and provided for in the deed of trust provisions.

We recognize that the principle which we invoke here allowing the inclusion within the lien of an amount for Galbut's representation of appellees is somewhat analogous to the "collateral source" rule generally applied in ascertaining damages in tort litigation. Division 2 of this court has stated that the collateral source rule does not apply in contract litigation. *Grover v. Ratliff*, 120 Ariz. 368, 586 P.2d 213 (App.1978). However, we note that the facts presented before this court are readily distinguishable from those presented in *Grover v. Ratliff*, *supra*, in that here, the insurance benefits were provided as a result of an insurance policy procured directly by appellees, and more importantly, the factual posture negates any substantial possibility of a windfall recovery by appellees. We therefore find no error in the trial court's inclusion of Galbut's attorney's fees within the deed of trust lien.

Appellants' final contention is that the trial judge erred in overruling their objections to appellees' untimely filed statement of costs. A.R.S. § 12–346 and Rule 54(f), Rules of Civil Procedure, 16 A.R.S., require that a party's statement of costs be filed within ten days after entry of judgment. Judgment was entered in this matter on February 24, 1978. Appellees' statement of costs was not filed until March 30th, well

**484**

beyond the ten day limitation. After appellants filed a timely objection urging that the taxing of costs be denied because the statement was untimely filed, appellees responded with a request that the time be extended, stating:

"At the time the original proposed findings of fact, conclusions of law and judgment were filed with this court, an original statement of costs was supplied to the court. It was not until after the judgment had been entered and the order denying defendants' motion for new trial that plaintiffs discovered that the court had not received and filed the original statement of costs. As a result, plaintiffs prepared the statement of costs which has now been signed and filed and served upon all parties."

After considering appellants' objections and appellees' response, the trial court found good cause and overruled the objections.

The ten day period allowed for the filing of a statement of costs is not jurisdictional. *Tovrea v. Superior Court*, 101 Ariz. 295, 419 P.2d 79 (1966). Both A.R.S. § 12–346 and Rule 54(f), Rules of Civil Procedure, 16 A.R.S., expressly authorize the court to extend the time "for good cause shown." While normally any request for an extension should be filed before the expiration of the time originally prescribed, Rule 6(b), Rules of Civil Procedure, 16 A.R.S., authorizes the court to extend the time after the expiration of the original period upon a showing of excusable neglect. We hold that the trial court's finding of "good cause" was tantamount to a finding of excusable neglect, and upon the record hold that the trial judge did not abuse his discretion in overruling appellants' objections to the untimely filed statement of costs.

The judgment entered by the trial court is affirmed.

WREN, C.J., and FROEB, J., concur.