**FIRST INSURANCE COMPANY OF HAWAII, Limited, Appellant,**

v.

**Carol Lee CHAPMAN, Appellee.**

**No. 19339.**

United States Court of Appeals
Ninth Circuit.

Dec. 2, 1965.

Rehearing Denied Dec. 28, 1965.

Merrill, Circuit Judge, dissented from affirmance on cross appeal.

Frank D. Padgett, Robertson, Castle & Anthony, Honolulu, Hawaii, for appellant and cross-appellee.

Martin Anderson, Joseph Schneider, Anderson, Wrenn & Jenks Honolulu, Hawaii, for appellee and cross-appellant.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

This case presents the question whether appellant Insurance Company, under the facts is estopped to assert lack of policy coverage.

Appellee, in an earlier action in the District Court for the District of Hawaii, recovered judgment against Edith Brown and Helen Chase for personal injuries in the sum of $125,000, which judgment on appeal was affirmed by this court. Brown v. Chapman, 304 F.2d 149 (9th Cir. 1962). Appellee, while wearing a hula skirt purchased at the defendants' store in Honolulu, had suffered serious burns when the skirt had burst into flames following contact with a lighted cigarette. Appellant Insurance Company had insured the defendants against liability arising from products hazard and the present action to recover the amount of her former judgment was brought under that policy by appellee standing in the shoes of the insureds.

The District Court ruled that the accident was not covered by the policy. The defendants in the prior action had sold their store prior to the accident. The policy had thereupon been terminated. The court ruled that by its terms its coverage was limited to accidents occurring during the policy period.[1]

The court found, however, that appellant company after the accident had represented to the prior defendants that they were covered by insurance; that they had relied on this representation to their detriment; that the representation had been made by appellant with knowledge of its falsity, in bad faith and for purposes of self-interest. The court concluded that appellant was estopped to deny coverage.

The facts with reference to such estoppel were as follows:

In January, 1959, appellee, through her attorney, advised Mrs. Brown, one of the prior defendants, that appellee had suffered an accident and was asserting a claim against Mrs. Brown and Mrs. Chase. The date of the injury was not disclosed other than that it had occurred in 1957. Mrs. Brown and Mrs. Chase had by then sold their interests in the Honolulu store and the policy of insurance had been terminated as of September 21, 1957. Mrs. Brown had established a home in the State of Washington and had lost or mislaid the policy. She promptly notified appellant of the claim and in response received a letter which stated:

"You are at liberty to inform Attorney John A. Roberts that you did have Liability Insurance Coverage in 1955, 1956 and 1957. If he cares to correspond with us with respect to this possible claim, we will consider the merits of it.

From a practical standpoint, judging by the information contained in your letter, we can see no liability on the part of your shop, even if it could be definitely established that the skirt was purchased from you. We suggest, therefore, that you not concern yourself further with this matter, other than to inform Mr. Roberts to correspond with us if he chooses, as we will make whatever investigation and or negotiation appears necessary to the extent of your policy coverage."

Thereafter Mrs. Brown did nothing. In March, 1959, appellant was informed that the accident had occurred in November, 1957, and thus was put on notice that it had not occurred within the policy period. Appellant, however, did not advise Mrs. Brown of noncoverage. In July, 1959, suit was brought by appellee against Mrs. Brown and Mrs. Chase. Appellant received a copy of the complaint and then, for the first time, notified Mrs. Brown that she was not covered and that it would not undertake her defense. The defendants then employed their own counsel.

The successors in ownership of the Honolulu store were also insured by appellant. The District Court found that in failing promptly to notify Mrs. Brown of noncoverage the company had hoped that the statute of limitations might run against the new owners and that a delay in an investigation of the accident on behalf of Mrs. Brown and Mrs. Chase would thus redound to the benefit of the new owners. They did not wish Mrs. Brown and Mrs. Chase to stir things up and possibly precipitate action by proceeding with investigation prior to actual commencement of suit. The court found that failure of the appellant promptly to investigate the claim on behalf of Mrs. Brown and Mrs. Chase was contrary to accepted insurance practice in Hawaii. It further found that Mrs. Brown and Mrs. Chase had been substantially prejudiced by failure to investigate and by the delay from March to July, 1959, in notifying them of the fact that they were on their own in defending any claim.

It was upon these facts that the District Court ruled that appellant was es-

---

1. The court's ruling in this respect is the subject of the appeal taken by appellee with which we deal later.

topped to deny coverage. Judgment was rendered against appellant in the sum of $147,862.05. This appeal from judgment followed.

In our judgment the court erred in holding appellant estopped to deny coverage.

At the outset we must bear in mind appellee's standing and basis for suit: She is suing *under the policy* and is not claiming to assert (on behalf of Mrs. Brown and Mrs. Chase) that appellant was guilty of wrongful, injurious conduct for which recovery should be had, independent of the policy.

If the appellant had broken a promise to defend, or had prejudicially interfered with the defense, these facts might give rise to a cause of action in Mrs. Brown and Mrs. Chase irrespective of coverage; but such independent causes of action are not available to appellee in the suit upon the policy.[2] It is only if the facts give rise to an estoppel to deny coverage that appellee can recover in this action.

■■ We find no such estoppel here since one of the essential elements of estoppel—prejudicial reliance—is completely lacking. Mrs. Brown and Mrs. Chase suffered no change of position in reliance upon any representation of coverage in the sense of an acknowledged duty to indemnify for loss. This was not a case where the insured, in reliance upon representation of coverage, had refrained from securing coverage of the risk elsewhere.[3] Here the only change of position resulted from the representation that the company would defend suit. It was upon that representation and not upon the acknowledged basis for it that reliance was had. If a duty to defend resulted it was because the company was being held to a promise to defend and not because coverage existed. Damage resulting from such reliance would be measured not by the policy limits but by the extent to which the company's defense (or a defense absent company interference) would have been more successful than the defense which was in fact made.

We conclude that the representation and reliance found in this case do not serve to create policy coverage by estoppel.

Judgment reversed.

*Cross Appeal of Chapman*

PER CURIAM.

■ The District Court has granted summary judgment for the defendant on four independent theories which were asserted at the trial by the plaintiff-appellee Chapman and she has taken cross appeals from these rulings of the District Court. First, she contends that it was error to deny plaintiff's theory of recovery based on reformation of the insurance contract. The District Court held that the evidence to support the reformation did not meet the standards required by Hawaii law.

Second, Chapman contends that the District Court's ruling that there was no evidence to support a finding of waiver was erroneous.

■ Third, she contends that the use of the term "accident" in one pertinent clause and of the term "occurrence" in another has created an ambiguity which should be resolved in favor of the insureds. The District Court held that the policy in this respect was not ambiguous.

■ Fourth, Chapman contends that it was erroneous for the District Court to

2. We would have grave doubts as to appellee's standing to assert such injury on behalf of Mrs. Brown and Mrs. Chase in any case. If monetary loss resulted to Mrs. Brown and Mrs. Chase from such wrongs, it would be because appellee had wrongfully profited thereby at their expense. Appellee (through Mrs. Brown and Mrs. Chase) would be seeking to recover that portion of the judgment which she should never have had in the first place.

3. Nor was it a case where the insurer actually undertook the defense without a reservation of right to assert non-coverage. Yuen v. London Guarantee & Accident Co., 40 Haw. 213 (1953), upon which appellee relies, was such a case.

hold that there was no support for her contention that the policy covering the new owners was a renewal of the policy covering Brown and Chase.

We agree with the rulings of the District Court on these four points.

Judgment affirmed.

MERRILL, Circuit Judge (dissenting):

While I cannot, for the reasons set forth above, agree with the District Court in holding appellant estopped to deny coverage (assuming that the policy did not afford it), I do find myself in agreement with the result reached by the court. In my judgment the policy should be held to afford coverage. Accordingly, upon the appeal taken by Carol Chapman, I would reverse.

The trouble in this case, as I view it, is simply that the insurance policy is drawn in such a fashion that when all of its terms are brought together its coverage of the products hazard is wholly and surprisingly inadequate. Some protection against accidents occurring after expiration of the policy period must be afforded or the risk which we normally associate with products hazard has not adequately been met. Some burden should rest upon an insurer to provide adequate coverage for the risks it purports to cover or to make inappropriate limitations upon coverage clearly apparent through offering optional full coverage at increased premium rates [1] or otherwise.

In recent years increasing attention has been paid to problems created by what have come to be called contracts of adhesion—those prepared by one party, usually incorporated in a printed form, and as to whose terms the other party has no choice but to reject or adhere.

Problems have been recognized in two distinct types of situation. In the first (which is not the situation we face) one party to a contract may possess overwhelming economic power. The weaker may possess no alternative but to agree to a contract which he understands perfectly but which in fact is oppressive.

The second situation, which is more common, is the one we face here. In this situation one party who is in a superior (but not necessarily an overwhelming) economic position may, through careful drafting of a grammatically unambiguous but nevertheless lengthy and complex document, obtain the assent of the other party although the other party does not in fact understand all the terms of the contract. It has been felt, in such a situation, that the adhering party should not be conclusively bound by all the terms of the writing as the best evidence of the parties' agreement.

It must be recognized that the case differs from that of the ordinary written contract in which each party has had his say, or at least an opportunity to speak as to its terms and the manner in which they are expressed. It is no sufficient answer in such a case to say that the writing is unambiguous. That is not the appropriate test. The problem, strictly speaking, is not one of construction but of the true scope of agreement. The conclusion that this is what the parties must have meant lacks the essential rational support of the fact that this is what *they* said and what *they* have agreed should be included. Where the contract is in the form of a lengthy printed agreement the inference that the adhering party has read it at length does not so clearly and

---

1. Failure to provide optional full coverage at increased rates would in itself seem to suggest that premium rates had been calculated upon the assumption that full coverage was afforded. In this respect the District Court, referring to testimony of the insurer's agents, stated:

"Parker's deposition (and Clay's testimony) indicates, without contradiction, that the policy actually delivered to the insureds was the *only* policy providing products liability that was then available to storekeepers * * * and that Parker did not know of any storekeepers or products liability policy which he could have sold which had a different or broader coverage than the one issued * * *."

rationally follow from his acceptance of it as to warrant a conclusive presumption to that effect.

It must of course be recognized that in the insurance industry and in many other fields of business it is not always practical for contracts to be reached through a process of bargaining and mutual agreement in detail. It is inevitable that some contracts will be of the adhesion type and the law must allow room for them. In such cases, however, the vulnerability of the adhering party should create a responsibility in the other for fair and open dealing. When the contract provides a surprising and unexpected or unreasonable exemption or limitation of the basic undertaking this responsibility has not been met.

Such was the holding in Karsales, Ltd. v. Wallis, 1 Weekly L.R. 936 (C.A. 1956), where Lord Denning stated:

"The law about exempting clauses has been much developed in recent years, at any rate about printed exempting clauses, which so often pass unread. Notwithstanding earlier cases which might suggest the contrary, it is now settled that exempting clauses of this kind, no matter how widely they are expressed, only avail the party when he is carrying out his contract in its essential respects * * *. They do not avail him when he is guilty of a breach which goes to the root of the contract. The thing to do is to look at the contract apart from the exempting clauses, and see what are the terms, express or implied, which impose an obligation on the party. If he has been guilty of a breach of those obligations in a respect which goes to the very root of the contract, he cannot rely on the exempting clauses."

Here the definition of products hazard reads:

"The term 'products hazard' means: (1) the handling or use of, the existence of any condition in, or a warranty of, goods or products manufactured, sold, handled or distributed by the named insured, other than equipment rented to or located for use of others but not sold, if the accident occurs after the insured has relinquished possession thereof to others and away from the premises."

The limitation clause, in a separate paragraph of the policy, reads:

"V. *Policy Period, Territory*

This policy applies only to accidents which occur during the policy period, within the United States of America, its territories or possessions, Canada or Newfoundland."

The limitation clause is wholly appropriate to most of the risks covered by the policy. When applied to products hazard, however, it has a most unexpected and surprising result: It actually excludes from coverage a not insubstantial area of the hazard which the policy, by definition, purports to cover and which the insured would normally expect it to cover. The limitation in this respect was inconspicuous and its oversight understandable. A most careful reading and analysis would have been necessary in order to comprehend its effect upon products hazard coverage. It was separated in the policy from the products hazard definition. The definition itself contained a condition which one might assume to be the extent of significant limitation. The focus of the limitation clause itself is upon geographical rather than temporal factors.

I would not hold that parties cannot agree upon such a limited coverage. (Indeed it would seem quite appropriate that any products hazard lingering after other public liability risks have ceased to exist should, in fairness to all concerned, be made the subject of a special optional provision.) I would, however, hold that under such policy provisions as are found here knowledge of such limitation and consent to it must appear otherwise than from the printed words themselves. The proof in this case was to the contrary.