Charles E. BROWN et al., Plaintiff-
Appellee,

v.

**FIRST INSURANCE CO. OF HAWAII,
Ltd., Defendant-Appellant.**

**No. 24083.**

United States Court of Appeals,
Ninth Circuit.

March 31, 1970.

Rehearing Denied May 18, 1970.

Cleveland C. Cory (argued), of Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., for defendant-appellant.

David E. Williams (argued), of Critchlow, Williams, Ryals & Schuster, Richland, Wash., for plaintiffs-appellees.

Before DUNIWAY, WRIGHT and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge.

First Insurance Company of Hawaii appeals from a judgment that held that the plaintiffs, Mr. and Mrs. Brown, could recover on a products liability insurance policy issued by First Insurance. We reverse.

In 1955 Mrs. Brown and a Mrs. Chase formed a partnership and opened a gift shop in Hawaii. They purchased an insurance policy denominated a "storekeepers' liability policy" from Vernon L. Parker, an employee (branch manager) of First Insurance. The policy was purchased in September of 1955 and ran from the twenty-first of that month to the twenty-first of September the following year. It was renewed in September 1956 for another year. It expired on September 21, 1957, and was not further renewed. In November, 1956 Mrs. Chase sold her interest in the partnership to a Mrs. Fink. In August of 1957 Mrs. Brown sold her interest in the business to a Mrs. Cross. When Mrs. Brown sold out in August of 1957 a new liability policy was purchased by the new owners. Mrs. Brown was not covered by that policy.

In March of 1956, while the policy was in effect, a Mrs. Frances Leppard purchased a grass hula skirt at the gift shop. She returned with it to British Columbia and subsequently loaned the

skirt to her niece, Carol Lee Chapman. On November 2, 1957 Carol wore the skirt to a costume party. The skirt caught on fire and burned with such ferocity that Miss Chapman was burned over 75% of her body. See Brown v. Chapman, 9 Cir., 1962, 304 F.2d 149, 4 A.L.R.3d 490.

Because the accident occurred after September 21, 1957, First Insurance denied coverage. The denial was based on Insuring Agreement V. of the policy which states, "[t]his policy applies only to *accidents which occur during the policy period* within the United States of America, its territories or possessions, Canada or Newfoundland." (Emphasis added.) Miss Chapman sued the Browns and was awarded a judgment of $126,-256.59. The judgment was affirmed by this court, Brown v. Chapman, *supra*. Miss Chapman then sued First Insurance in an attempt to recover under the Brown's policy. She advanced three grounds for recovery that are relevant here. 1. That the company was estopped from denying coverage under the policy because it had breached a promise to defendant the action. 2. That the company was estopped to deny coverage because of certain representations that its agent, Parker, had made at the time the policy was purchased. 3. That the term "accident" as contained in the policy was ambiguous and should be construed to afford coverage. The Federal District Court in Hawaii held against her on the last two contentions, but found for her on the first. This court in First Insurance Company of Hawaii v. Chapman, 9 Cir., 1965, 355 F.2d 49, reversed the district court's decision on the first contention and affirmed on the third. The second contention was not argued on appeal. Miss Chapman was subsequently able to satisfy her judgment directly from the Browns. The Browns then brought this action to recover the amount of the judgment plus interest, damages for emotional distress, and attorney's fees. The district court found for the Browns; and awarded a judgment of $185,000 which included at-

torney's fees. No award was made for emotional distress.

The district court relied on two grounds in finding for the Browns. First it held that First Insurance was estopped to deny the coverage of the policy because its agent, Parker, had told Mrs. Brown that she would be covered for this type of accident. First Insurance argued that estoppel could not be found where there was a clear and unequivocal clause to the contrary in the contract.

■ The general rule seems to be that the doctrines of waiver and estoppel will not suffice to bring risks within the coverage of an insurance policy if the risks are not covered by the terms of the policy or are expressly excluded by it. See the cases collected 1 A.L.R.3d 1147–1150. There is no clear cut decision on this issue in Hawaii, but there is some authority. Thus Boardman v. Fireman's Fund Ins. Co., 1902, 14 Haw. 21, held that an agent's conduct could not prevent the insurer from asserting a clear and unambiguous limitation on the time within which a proof of loss had to be filed. Also a Hawaiian statute, 5 Revised Laws of Hawaii, § 431–425(a), (b), provides that "[n]o agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy" and "[n]o insurer or its representatives shall make any insurance contract or agreement relative thereto other than is plainly expressed in the policy." There is also an integration clause in the policy which reads as follows:

"§ 14. By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Finally, the policy also had a clause designed to prevent estoppel:

"§ 11. Changes. Notice to any agent or knowledge possessed by any agent

or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of the policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the president, a vice president, or a secretary of the company and countersigned by a duly authorized representative."

Nevertheless, the district court found that:

"[h]ere Vernon L. Parker, the insurance company's salaried branch manager, interpreted the provision in a manner contrary to the interpretation of the company which seeks to avoid liability. The branch manager represented to the assureds that the policy meant what he thought it did; the assureds were unaware of the company's interpretation and in good faith relied on the representations of the branch manager when they purchased the insurance. Under these circumstances, the company is estopped from denying the branch manager's interpretation. The only possible exception would be delivery of the policy with a limitation provision written in clear, simple and unambiguous language." [295 F. Supp. 164, at 168–169]

Second, the court found ambiguity in the word "accident" as used in the limitation section quoted above. The branch manager, Mr. Parker, testified that he had construed the word accident to mean the *sale* of defective merchandise. The company interprets the word to mean the unexpected happening resulting in injury.

■ We agree with the finding of the trial court in Chapman v. First Insurance Co. of Hawaii, *supra,* that the contract was not ambiguous. In that respect, we affirmed the district court. The basis of our ruling is not collateral estoppel, but *stare decisis.*

■ The district court also held that Parker's testimony was not barred by the parol evidence rule. The court cited Bishop Estate Trustees v. Castle & Cooke, Inc., 1962, 45 Haw. 409, 368 P.2d 887 for the proposition that the parol evidence rule does not bar evidence of contemporaneous oral agreements to explain an ambiguity in the contract. Since we hold that the contract was not ambiguous, this exception to the parol evidence rule is not applicable.

We need not decide whether, in the face of the Hawaiian statute, the clauses in the policy, the *Boardman* case, and an unambiguous contract, a Hawaiian court would apply a rule of estoppel to expand the scope of the policy, although we doubt that it would.

■ We find that the evidence presented at trial was insufficient to establish an estoppel. The rule in Hawaii is that estoppel must be established by clear and convincing evidence. Coelho v. Fernandez, 1963, 46 Haw. 578, 384 P.2d 527, 530.

In this case the testimony of all the interested parties, Mrs. Brown, Mrs. Chase, and Mr. Parker, is that the subject of what would happen should accidents occur *after* the expiration of the policy never was discussed. Further, although Parker testified that in his own mind he believed the term "accident" in the limitation clause applied to the sale of defective merchandise, it is uncontested that he did not communicate this belief to either Mrs. Brown or Mrs. Chase. The relevant portions of the testimony of these three witnesses is set forth in the margin.[1]

---

1. On direct, Mrs. Brown testified:
"Q. Mrs. Brown, what specific conversation did you have with Mr. Parker with reference to the kind of coverage you wanted in terms of products liability?
A. We wanted complete coverage as we had heard of a little incident or two; and, we didn't want any repercussion back on the mainland store. We wanted all the coverage we could possibly get so we could be in the clear.
Q. Did he tell you you would be covered for any sales for any items while you were operating the shop?

There is no question that the insureds knew that the policy was for a one year term. They renewed it at the end of the first year, long before this controversy

\* \* \* \* \*

A. Yes."

"Q. What did he tell you about what kind of coverage it afforded?

A. He told us it was completely covered.

Q. Was there any other conversation with reference to the type of coverage?

A. Just what we had requested in the first place that we would—what we wanted; that we wanted anything that would be complete so we wouldn't have any more trouble in the mainland should anything arise.

Q. Was there any discussion as to what might happen after you left the business as to sales that might have occurred while you were still there?

A. No."

On cross-examination, she testified:

"Q. Had it ever occurred to you there might be a situation of an accident taking place after the policy period expired as a result of a sale that was made during the policy period?

A. No.

Q. That wasn't discussed with Mr. Parker?

A. The thing that was asked Mr. Parker was that we would be completely covered so that we would not cause any loss on our mainland business. That was what we discussed. We didn't say 20 years from now or anything.

Q. You didn't discuss whether or not you would be covered for an accident that might happen 20 years from now?

A. No, I didn't.

Q. Because it never occurred to you or Mr. Parker to discuss that, did it?

A. I don't know what occurred to Mr. Parker. I didn't think of that."

On direct, Mrs. Chase testified:

"A. We told him we wanted full coverage for protection for anything that might be purchased in the store and products liability also.

Q. What did he tell you?

A. He said he would try and find—get it for us.

\* \* \* \* \*

Q. Did he make any statement at the time he delivered the policy back with regard to whether or not there was full coverage for goods that were sold in the shop?

A. Well, he said it was products liability and would give us complete coverage for anything that was sold in the store."

On cross-examination, she testified:

"Q. Mrs. Chase, you didn't have any conversation about what would happen if an accident were to happen in the future, did you?

A. Not that I recall."

The pertinent part of Mr. Parker's direct testimony is:

"Q. What disclosure did they make as to what kind of coverage they were interested in?

A. They wanted complete coverage.

Q. Did they indicate why, other than the normal situation?

A. Yes, because of their various business interests on the mainland.

Q. What specific discussions were there with reference to products liability?

A. I had represented the storekeeper's liability policy because, as I explained to them, there was a complete package of both premises and products liability. And, as I recall it, I also explained to them that if any liability—they were particularly concerned with the products liability—and I explained that the products liability would protect their liability for any sales that they would make out of that shop.

\* \* \* \* \*

THE COURT: What did you explain to them already?

THE WITNESS: They were particularly concerned about the products liability.

\* \* \* \* \*

And, I explained that the products liability would protect them for any liability that might be incurred for any sales in their shop.

Q. Did you know of the provision in the policy which appears to require that the accident occur during the life of the policy?

THE WITNESS: I wasn't at that time, your Honor.

\* \* \* \* \*

THE COURT: Were you under the impression yourself that if the merchandise was sold during the life of the policy that they would be covered even after the termination of the policy?

THE WITNESS: Yes, that was my understanding.

THE COURT: Did you give that information to Mrs. Brown and Mrs. Chase?

arose. What Mr. Parker told the insureds was true, as far as it went. The policy did cover sales made while it was in effect. It also covered an accident occurring while the policy was in effect, even if the sale had occurred during a prior policy period. The question as to whether it would cover an accident occurring when the policy was no longer in effect, but the sale had been made when it was in effect, was never mentioned. Parker may have thought as he says he did, that there would be such coverage. But he never told either of the insureds that. They never asked him because they didn't even think of it. Yet that is the only question as to which it is claimed that there was an estoppel. Estoppel depends, first and foremost, upon the making of a misrepresentation. Here, as to the crucial question at issue, there was no representation at all, much less a misrepresentation. We do not think that Parker's statements to the insureds can be twisted into the telling of a half truth such as to make his failure to say anything about the effect of termination of the policy of a misrepresentation. The usual effect of the termination of a policy is the termination of coverage. The evidence does not support the finding of estoppel.

Reversed.

A. No. As far as the time element was concerned, I can't recall discussing that.

Q. (By Mr. Ryals) But, you did say there was coverage for any sales in the shop while the policy was in force?

On cross-examination, he said:

"Q. Mr. Parker, in fairness to both you and Mrs. Brown, neither of you were contemplating an accident happening some distant date in the future that arose out of a sale during the policy period, were you?

A. That's right.

\*      \*      \*      \*      \*

Q. You were familiar particularly with Paragraph 5 which provided that policy applies only to accidents which occur during the policy period?

A. At that time I was not aware of the significance of that.

Q. You knew the clause was in the policy?

Q. I think I see what you mean. You interpreted the term accident as the accident of the sale that was made?

Q. And, this led you to believe anything that happened during the policy period, even though the injury didn't occur until later, that would be covered by the policy?

Q. But, this was not specifically discussed with Mrs. Brown and Mrs. Chase?

